IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BRENT NIX, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 7:17-CV-189-D |
| | ) | |
| THE CHEMOURS COMPANY FC, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | | |
| CAPE FEAR PUBLIC UTILITY AUTHORITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 7:17-CV-195-D |
| | ) | |
| THE CHEMOURS COMPANY FC, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | | |
| ROGER MORTON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 7:17-CV-197-D |
| | ) | |
| THE CHEMOURS COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | | |
| VITORIA CAREY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 7:17-CV-201-D |
| | ) | |
| E.I. DU PONT DE NEMOURS AND COMPANY et al., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| BRUNSWICK COUNTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 7:17-CV-209-D |
| | ) | |
| DOWDUPONT, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

On December 15, 2017, plaintiffs Cape Fear Public Utility Authority ("CFPUA"), Brunswick County, Brent Nix, Roger Morton, and Victoria Carey ("plaintiffs") jointly moved for limited expedited discovery, and filed a memorandum in support [D.E. 41, 42]. On December 29, 2017, defendants responded in opposition [D.E. 46]. Plaintiffs request limited access to the "Chemours' Fayetteville works facility for the purpose of accessing and inspecting the facility's active manufacturing areas on three separate dates or as otherwise needed in order to obtain process-wastewater samples representative of normal production." [D.E. 41] 3. On January 4, 2018, the court held a hearing and directed the parties to meet and confer. After extensive and productive discussions, the parties reached an impasse. On May 25, 2018, the court held a hearing. As explained at the hearing, the motion for expedited discovery is granted.

The Federal Rules of Civil Procedure allow parties to engage in discovery only after they have conferred in accordance with Rule 26(f) "except in a proceeding exempted from initial disclosures under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). The rules do not address when a court should order expedited discovery, and "courts have been unable to settle upon a uniform standard." Chryso, Inc. v. Innovative Concrete Sols. LLC, No. 5:15-CV-115-BR, 2015 WL 12600175, *3 (E.D.N.C. Jun. 29,

2

2015) (unpublished); see Dimension Data N.A. v. NetStar-1, Inc., 226 F.R.D. 528, 531 (E.D.N.C. 2005); L'Occitane, Inc. v. Trans Source Logistics, Inc., WMN-09-CV-2499, 2009 WL 3746690, *1 (D. Md. Nov. 2, 2009) (unpublished).

When evaluating requests for expedited discovery, "district courts in the Fourth Circuit have followed two approaches: one looks to the reasonableness of the request, taking into account the totality of the circumstances, and the other follows a modified form of the preliminary injunction test." Lewis v. Alamance Cty. Dept. of Soc. Servs., 1:15CV298, 2015 WL 2124211, *1 (M.D.N.C. May 6, 2015) (unpublished); see ForceX, Inc. v. Tech. Fusion, LLC, No. 4:11CV88, 2011 WL 2560110, *5 (E.D. Va. June 27, 2011) (unpublished).

Courts in this district have generally opted to follow the reasonableness inquiry, guided by whether the moving party shows good cause. See Chryso 2015 WL 12600175, at *3; Me2 Prods., Inc. v. Does 1–16, 4:16-CV-279-FL, 2016 WL 7017268, *1 (E.D.N.C. Dec. 1, 2016) (unpublished). This inquiry considers four factors:

> (1) the procedural posture of the case;
> (2) whether the discovery at issue is narrowly tailored to obtain information that is probative . . . ;
> (3) whether the requesting party would be irreparably harmed by waiting until after the parties conduct their Rule 26(f) conference; and
> (4) whether the documents or information sought through discovery will be unavailable in the future or are subject to destruction.

Chryso, 2015 WL 12600175, at *3; see Me2 Prods., Inc. 2016 WL 7017268 at *1.

Plaintiffs seek access to defendant Chemours' Fayetteville works facility to obtain and test samples of wastewater that are "representative of normal production." See [D.E. 41]. Plaintiffs request this access "on three separate dates or as otherwise needed." Id. Defendants respond that a higher-than-normal degree of scrutiny is required when the court evaluates this request, both because of the expedited timeline, and because it would require entry onto Chemours' premises. See

3

[D.E. 46] 11; Belcher v. Bassett Furniture Indus., Inc., 588 F.2d 904, 908 (4th Cir. 1978). Plaintiffs request discovery under Rule 34(a)(2), which anticipates that parties may need to enter onto "land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photography, test, or sample the property or any designated object or operation on it." Fed. R. Civ. P. 34(a)(2). A court may order this form of discovery "for good cause shown." Belcher, 588 F.2d at 908.

Plaintiffs have shown good cause. Plaintiffs' requests are reasonable and narrowly tailored to obtain critical information about the wastewater from the Chemours' Fayetteville works facility that is not accessible elsewhere. In opposition to this conclusion, defendants propose two alternative methods for plaintiffs to obtain the data they seek: (1) testing water collected directly from the Cape Fear River, and (2) testing data "taken by Chemours and provided to DEQ and EPA" some of which is available online. See [D.E. 46] 10–12. As described during the January 4, 2018 status conference, the physical layout of the wastewater system at the facility allows Chemours to control the concentration and dilution of fluoropollutant byproducts released into the Cape Fear River and therefore accessible for testing. Because the wastewater discharge combines industrial byproducts with non-contact cooling water, testing at the output may not yield informative results. Direct testing of wastewater at the source before dilution is essential to identifying the relevant compounds. Furthermore, plaintiffs' ability to obtain publically available testing data compiled by government regulators is not a suitable alternative to the tests plaintiffs propose. The publically available data represents a limited snapshot of the information plaintiffs seek.

Defendants argue that plaintiffs' request is overly broad, in part because plaintiffs are not seeking a preliminary injunction. See [D.E. 46] 8–9. Although expedited discovery is often considered when one party seeks a preliminary injunction, expedited discovery is not limited to such

4

cases. See Monsanto Co. v. Woods, 250 F.R.D. 411, 413 (E.D. Mo. 2008); Tribal Casino Gaming, Enters. v. W.G. Yates & Sons Const. Co., 1:16CV30, 2016 WL 3450829, *3 (W.D.N.C. June 16, 2016) (unpublished). Expedited discovery is not a "fishing expedition" and is not permitted where the information requested is generally "relevant to the overall case." See Chryso, 2015 WL 12600175 at *5. Nonetheless, it is permissible when narrowly tailored to a particular issue. See id. Here, the requested discovery is narrowly tailored to a particular issue.

Plaintiffs also persuasively explain that they will be harmed if the court delays discovery until after the Rule 26(f) conference. In particular, two plaintiffs, CFPUA and Brunswick County, seek expedited discovery in order to incorporate appropriate remediation technology into the ongoing redesign of their water treatment systems to "remove fluoropollutants . . . to ensure safe drinking water for local residents." [D.E. 42] 6. These plaintiffs allege that such a redesign will be less effective unless they know "precisely what chemicals must be removed from the untreated water." Id. Defendants respond that there is little risk of harm because the wastewater is no longer being discharged into the Cape Fear River and because there are other ways for plaintiffs to discover the information they seek. See [D.E. 46] 9–10; see also [D.E. 70, 78]. As explained, the alternative proposed methods to ascertain the wastewater composition are inadequate. Furthermore, the presence, concentration, and duration of discharge of fluoropollutants in the Cape Fear River appears to be hotly disputed. Even if Chemours is not currently discharging flouropollutants, that fact does not help defendants in light of plaintiffs' arguments regarding the ability of fluoropollutants to bioaccumulate in flora and fauna and persist in river sediment. See [D.E. 51] 17. Given the narrow request for expedited discovery and the major costs associated with retrofitting the water treatment plants, plaintiffs' request is reasonable and supported by good cause.

Finally, plaintiffs allege that "the passage of time alone could make it impossible to collect

5

relevant evidence" in light of the way operations at the facility have changed. Cf. Monsanto Co., 250 F.R.D. at 413. In Monsanto, plaintiff sought expedited discovery in a patent infringement case where it claimed that the defendant had improperly replanted a patented strain of crops. See id. The court permitted expedited discovery, allowing plaintiff to enter onto defendant's land and to take samples of the crops to "minimize the risk of loss or destruction of the ... evidence of infringement [which] could be destroyed intentionally," or unintentionally by natural processes. Id. Here, plaintiffs recount a series of steps that defendants have taken in response to environmental compliance concerns including changes in manufacturing processes and new wastewater remediation techniques that will reduce the concentration of the alleged fluoropolutants in the wastewater over time. See [D.E. 42] 7–8. If plaintiffs are unable to sample and test the wastewater until after a Rule 26(f) conference, relevant evidence may be lost. Defendants' assurances that it will maintain extant sampling results, although important, do not override the need for plaintiffs to collect and test the requested samples.

In sum, plaintiffs request a narrow slice of information. The request is tailored to a single piece of critical evidence which will be collected with minimal intrusion on three dates. Having evaluated the totality of the circumstances, plaintiffs' joint motion for expedited discovery [D.E. 41] is GRANTED. Chemours SHALL make the Fayetteville works facility available to plaintiffs in order to gather water samples from the five individual wastewater streams at the facility during normal production on three separate dates between now and July 13, 2018. If certain manufacturing or waste-disposal processes are not operating on the days that plaintiffs access the facility, Chemours SHALL permit access as soon as those processes are again operating. Plaintiffs are not restricted in the methods they employ to analyze the samples collected or in the chemicals they test for in those samples. The parties SHALL meet and confer and SUBMIT a proposed protective order concerning

6

the expedited discovery not later than June 1, 2018.

SO ORDERED. This 25 day of May 2018.

                                                    JAMES C. DEVER III
                                                    Chief United States District Judge